**STATE OF WEST VIRGINIA**

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.S. and J.S.-1

No. 20-0644 (Kanawha County 19-JA-262 and 19-JA-264)

## MEMORANDUM DECISION

Petitioner Father J.S.-2, by counsel Timothy J. LaFon, appeals the Circuit Court of Kanawha County's July 21, 2020, order terminating his parental rights to A.S. and J.S.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying him an improvement period and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition against petitioner and his girlfriend, T.G., alleging a significant history of domestic violence. The DHHR alleged that it had received many referrals and had been actively providing in-home services, but that the conditions of domestic violence had not been abated. The DHHR alleged that on one occasion, petitioner committed domestic violence on R.M., T.G.'s son, causing petechial hemorrhages to the child's face.[2] A Child Protective Services ("CPS") worker spoke to petitioner regarding the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we refer to them as J.S.-1 and J.S.-2, respectively, throughout this memorandum decision.

[2]Petitioner is not R.M.'s biological father and R.M. is not at issue on appeal.

1

allegations of domestic violence against the family, and petitioner admitted to slapping and "backhand[ing]" T.G. when she instigated a physical assault against him. Petitioner stated that he previously sought a domestic violence protective order against T.G. but failed to appear at the hearing, and he admitted to misusing steroids. The CPS worker also spoke to J.S.-1 and A.S., both of whom reported observing petitioner and T.G. engaging in domestic violence. R.M. reported hearing people being hit and things being broken and observed scratches and bruises on both petitioner and T.G. In sum, the DHHR alleged that petitioner regularly engaged in domestic violence that placed the children in harm's way and had substance abuse, mental health, and anger control issues that prevented him from being an appropriate parent.

Later in April of 2019, the circuit court held a preliminary hearing, which petitioner waived. The circuit court ordered petitioner to participate in services, including parenting and adult life skills classes, random drug and alcohol screens, a parental fitness/psychological evaluation, anger management classes, and domestic violence counseling.

Petitioner underwent a psychological evaluation in May of 2019. Throughout the assessment, petitioner denied any physical aggression, instead claiming that he was the victim of domestic violence. Petitioner blamed his past partners for the problems in his romantic relationships. Petitioner also minimized the injuries he caused to R.M. Petitioner stated that he picked up the child by his arms because he was not listening and tossed him down. Petitioner blamed R.M.'s behavior for causing the bruises and found no fault in his own behavior. Petitioner admitted to using methamphetamine and steroids as recently as the beginning of 2019 and blamed his various girlfriends for his substance abuse. The evaluating psychologist opined that petitioner's prognosis for attaining minimally adequate parenting was poor

> largely due to chronic substance abuse and dependence and minimization of the same, continued drug use despite the knowledge that his behavior is closely monitored by CPS and the court, persistent domestic violence and failure to acknowledge his role in the same, his tendency to blame others for his problems, failure to acknowledge past child maltreatment, personality involvement in referral issues, and defensive responding in the current evaluation.

At an adjudicatory hearing held in June of 2019, petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that his drug use interfered with his parenting ability and that he engaged in domestic violence, which endangered the children. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and held petitioner's motion for a post-adjudicatory improvement period in abeyance. The circuit court granted petitioner supervised visits with the children.

In October of 2019, the circuit court held a hearing on petitioner's motion for a post-adjudicatory improvement period. The DHHR objected to petitioner's motion and advised the circuit court that petitioner was arrested for domestic battery against T.G. in September of 2019. Then, fifteen days later, while on bond, petitioner was arrested for driving under the influence when he caused an accident and then fled from the scene. The DHHR further advised that petitioner's supervised visits with the children were suspended after reports that petitioner spoke poorly of the children's mother during the visits, despite repeated warnings from the visitation

supervisor. The circuit court did not "find by clear and convincing evidence that [petitioner] [would] meaningfully participate in an improvement period" and denied the motion. The circuit court further suspended the services that were being provided to petitioner and ordered him to have no direct or indirect contact with either T.G. or the children.

The circuit court held an initial dispositional hearing in January of 2020. Petitioner again moved the circuit court for an improvement period, and the circuit court denied the motion and proceeded to hear evidence as to disposition. Petitioner testified that he visited with the children against court orders. Following testimony, the circuit court continued the dispositional hearing.

The circuit court held a final dispositional hearing in June of 2020. Petitioner renewed his motion for a post-adjudicatory improvement period, which the circuit court denied. A CPS worker testified that the DHHR recommended termination of petitioner's parental rights given that his services were suspended after October of 2019 due to his poor behavior, which resulted in his inability to remedy the conditions of abuse. Specifically, the worker testified that petitioner's actions ultimately caused him to lose his services, including several arrests, a DUI charge, and more domestic violence. The worker reported that petitioner and T.G. engaged in four instances of domestic violence during the proceedings despite having been prohibited from contacting each other. Further, the worker said that petitioner failed to accept responsibility for his actions even though he had been found guilty of at least one domestic violence charge. The worker opined that "instead of trying to improve his situation, [petitioner] has continued to blame others, not take responsibility. He has showed very little maturity by calling people names and making fun of the court proceedings . . . instead of taking into account what he could do for himself." The worker conceded that petitioner was compliant with some services and had completed anger management classes but testified that he continued to engage in domestic violence after those services were completed.

Petitioner presented the testimony of several witnesses. A service provider testified that petitioner complied with parenting and adult life skills classes, maintained good communication with the provider, appeared fully engaged in conversations, and appeared to be candid and willing to address his issues. A family friend testified that she had always observed petitioner to be a good, attentive parent.

An anger management specialist testified that he performed an intake for petitioner and concluded that petitioner "did not qualify as a person in need of follow-up as far as anger management being a . . . clinically significant issue in who he is." However, when counsel for petitioner attempted to admit the specialist's report into evidence, the circuit court stated that the document would be marked, but not considered in its ruling, based upon counsel's failure to share the report with other counsel prior to the hearing. Petitioner's counsel then stated that the witness's testimony was offered in rebuttal to the allegation that petitioner had not sought out services on his own.

By order entered on July 21, 2020, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. The circuit court found that petitioner was arrested for driving under the influence, causing an accident,

and fleeing from the scene. Moreover, the circuit court found that despite having completed a domestic violence course, and despite the entry of a no-contact order, petitioner continued to engage in domestic violence with T.G. The circuit court found that petitioner had been charged with domestic battery against T.G. for beating her "with his fist on the upper left side of her face causing injury" and for pulling T.G. "off of a chair and forc[ing] her down the flight of steps from his apartment causing physical injuries to [T.G.] that were visible and corroborated in her statement." The circuit court further noted that petitioner's supervised visitation with the children was suspended due to "his uncontrolled behavior at the visits and continued criminal activity." The circuit court also cited petitioner's psychological evaluation, which indicated a poor prognosis for improvement, and found that petitioner blamed others instead of taking responsibility for his actions. The circuit court concluded that, despite having received months of remedial services, petitioner continued to make poor decisions and failed to put his children first. Petitioner appeals the dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him an improvement period. Petitioner claims that the record did not support a finding that he "was not a suitable parent and that he could not successfully complete an improvement period." According to petitioner, he stipulated to the allegations set forth in the petition, expressed his willingness to participate in an improvement period, and "made leaps to change his life." He maintained employment and housing, and severed his relationship with T.G. Additionally, petitioner arranged to participate in services through Kanawha Pastoral Counseling Center ("KPCC") to address his issues with anger management and domestic violence. Petitioner remained drug-free throughout the proceedings and participated in services he was offered through CPS. While petitioner concedes that he was charged with driving under the influence, he notes that the children were not present and that it "had nothing to do whatsoever with his parenting skills." He further states that at the time his services were

---

[3]The mother successfully completed her preadjudicatory improvement period, and the petition against her was dismissed. The permanency plan for the children is to remain in the care of their mother.

terminated, he had not been convicted of any domestic violence charges. Petitioner contends that the circuit court's refusal to grant him an improvement period and the decision to terminate services made it impossible to progress in his rehabilitation plan. Given this evidence, petitioner avers that his case is distinguishable from *In re B.H.*, No. 20-0218, 2020 WL 5652432 (W. Va. Sept. 23, 2020)(memorandum decision), in which this Court determined that the parent "failed to present clear and convincing evidence that he would fully participate in the improvement period" and upheld the circuit court's refusal to grant the parent an improvement period. *Id.* at *3.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While petitioner contends that he made some "leaps" and satisfactorily participated in services offered, the record shows that petitioner continued to engage in domestic violence. In fact, after having completed a domestic violence course, petitioner engaged in domestic violence with T.G. on four more occasions and was charged with domestic battery on at least one occasion. While petitioner states that he was not convicted of any charges at the time his services were terminated, the record reveals that petitioner eventually was convicted of at least one charge. Moreover, petitioner fails to cite to the record establishing that he contested any of the instances of domestic violence during the proceedings below. In addition to continuing to engage in domestic violence, petitioner demonstrated that he lacked impulse control by speaking negatively of the children's mother during their visits together and by violating the circuit court's no-contact order. Petitioner repeatedly saw T.G. during the proceedings and, on at least one occasion, visited with his children against court order. Petitioner also failed to accept responsibility for his actions. Throughout the case, petitioner minimized the effect domestic violence had on the children, blamed others for his situation, and focused on his belief that the respondent mothers were being treated differently. "Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citing *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner has failed to demonstrate he was likely to fully participate in an improvement period, his case is not distinguishable from *In re B.H.* Accordingly, given petitioner's continued acts of domestic violence despite the provision of services and his failure to acknowledge the conditions of abuse, we find no error in the circuit court's decision to deny him an improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights. According to petitioner, he separated from T.G. and, therefore, any domestic violence between them was over. Petitioner successfully participated in services until they were terminated. Despite not having been offered an improvement period, petitioner worked towards rectifying the issues

of abuse and neglect by seeking services on his own. Petitioner eventually arranged to participate in private services through KPCC and "was making strides to show the [c]ourt his willingness to make necessary changes in his life." Petitioner avers that the evidence does not support the termination of his parental rights and that "[c]ompelling circumstances did not exist to justify a denial of [petitioner's] repeated requests for an improvement period."

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The evidence as set forth above supports the circuit court's decision to terminate petitioner's parental rights. Here, petitioner was offered services both prior to and after the petition's filing but failed to modify or improve his behavior. Although petitioner was not granted a formal improvement period, he was offered parenting and adult life skills classes, domestic violence classes, supervised visits, and a psychological evaluation to provide him insight into his own behavior. Nevertheless, petitioner continued to engage in domestic violence, violate court orders, and failed to truly accept responsibility for his actions. While petitioner claims he arranged for private services, the record he provides is devoid of any evidence of his participation or successful completion of any services through KPCC. To the extent petitioner claims that he lacked the financial resources to arrange for his own services, he fails to provide a citation to the record demonstrating that he raised this issue below. More importantly, this argument attempts to detract from the fact that petitioner received remedial services for several months but failed to internalize the materials taught. Instead, petitioner blamed the respondent mother for his situation. Lastly, we note that the psychological evaluation indicated that petitioner's prognosis for attaining minimally adequate parenting was poor due to his "persistent domestic violence and failure to acknowledge his role in the same, [and] his tendency to blame others for his problems," and petitioner's conduct throughout the proceedings below was consistent with that prognosis. Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights upon its finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7